If it pleases the court, my name is Jerry Newton. I represent the petitioner Delano Cleveland, along with my co-counsel Norm James. I would like to approach this Batson issue more globally, if that's okay, because as we know, of the four jurors, if any one of them was struck, for racial animus, that's basically the end of the case. And in doing that, I'd like to go back to step two and talk about reliability, because since this is a death case, the enhanced reliability that the court talked about in Zant applies to what's going on in this case. And as a practical matter, this was not a reliable step two analysis. Why? Well, 27 years had gone by, and if you ask yourself why it had 27 years gone by, the only answer you can come up with is this prosecutor wouldn't put on the record her reasons for consecutive times when a Batson strike was challenged by the defense. I agree with you that perhaps the failure to provide an explanation when given the opportunity at Enduring Void Year might be a consideration at step three for whether or not it was a substantial motivating factor. But I guess I don't really understand your emphasis on the argument that you're making right now, because when there was an evidentiary hearing granted and the testimony of this particular prosecutor was allowed, you ended up with what I think is a fairly blatant statement explicitly referencing race that runs afoul of Batson. I don't disagree, but what I don't want to do is ignore the fact that three other black jurors were struck and the reasons that were developed came out of an unreliable proceeding. It's unreliable for any of us to expect that we'll have a specific recollection of Void Dotter. Well, counsel, I disagree, and I'm not sure this is your strongest argument. You can use your time the way you want, but having looked at a lot of these, well, of This is not a prosecutor who comes back after decades and says, I don't remember these people, and I'm looking at the record and I'm trying to recreate. That's not what happened here. No, what I'm suggesting is what happened here, she didn't tell the truth. I understand the argument. And again, I think that that goes to the step three analysis. So all of these things, the fact that, you know, she has such a clear memory of these particular, you know, jurors that she struck, but not necessarily the people who served on the jury that convicted your clients. You know, those things are all things that ought to be considered at step three, but it really doesn't, I'm not, I agree with Judge Christin that I'm not sure, and having read everything, it's not that we're discounting it or ignoring it. We've considered it, but I'm not sure that this is really your strongest argument for this oral argument. Well, let me address what I think was a consideration from Judge Gould. During the discussion of should we send this back to the district court, my client's been in prison for 34 years, and he got an evidentiary hearing in the district court below after some 27 years, and it required, amongst other things, for his counsel to file a petition for writ of mandamus with the Ninth Circuit. So that we could get a hearing. Now, if this case goes back to Judge Wilson, and he had, he presided at the evidentiary hearing, he was there, he heard the testimony, he heard my questions to the prosecutor, and knowing Judge Wilson as I do, I don't think that he missed something. I think he carefully considered everything, and his decision, if it was wrong, it's just simply wrong. But on the remand. Well, it needs to be more than simply wrong. It needs to be clear error, right? It has to be illogical, implausible, and not supported by the record. Clear error. And. Counselor, you just told me you think that Judge Wilson did consider everything. I think he considered everything. I've known Judge Wilson for a long time. Now, that's a personal opinion, but I think he considered everything. It was such a fight to get to an evidentiary hearing, and it took so long that, and it took another, another two or three years after the evidentiary hearing before we had an opinion, I'm sure he. So I think I understand your argument, and I think the counsel for in the prior case also argued about the mounting prejudice of a remand. But let me just pause it for you for a moment. This notion that if if everything was considered, I think that to the extent our view is that the most significant. Harmful testimony wasn't grappled with. And your options are for us to say everything was considered. He did, in fact, grapple with it. He might not have talked about it, but I believe he really considered it. You know, that to me, it seems maybe like the position you don't want to be taking, given the fact that the alternative is that he needs to do so. And that would be something that he can do on remand. And I think that's why we just keep going back to this question of whether we address it or we remanded. I think he considered it. Well, if he considered it and we know that he made the ultimate finding that the prosecutor was not substantially motivated by race, then what's your argument? What's your path on behalf of your client today? What's your argument today? To convince you that clear error occurred. OK, what's your go right ahead? Because it's illogical. It's not something you can draw from this record. And it's improbable. So those are the conclusions. Tell me, tell me why, please. Because race was clearly considered with respect to juror Mary J. It has to be a substantial motivating factor. And. The prosecutor has to have been substantially motivated by race. That's a little bit different. She had to have been. Why? Hold on, hold on. So so you've you've been here in the last hour when we've been engaging with co-counsels, co-defendants counsel. And the district court cited other reasons. The prosecutor cited other reasons. And your your position is those can't have been correct. Those can't have been the actual reasons. We need to know why.  Well, I think he didn't point to the statement made by Mary J. Because it wasn't consistent with how he intended the case to come out. So you think your argument is that he considered everything. The district court considered everything and omitted mention of that. Yes. And that he clearly erred in reaching his ultimate conclusion because. Because race was a substantial factor with respect to Mary J. And the fact that it doesn't appear in his decision doesn't mean he didn't consider it. It means that when he wrote his decision, he ignored it. Well, you've got a bigger problem because it's not that it doesn't appear in his decision. Page 16 does mention race. That is where judge the district court does mention race. I don't have page 16 in front of me, your honor. Well, I can read it to you if that's helpful. He says at page 16, the prosecutor, this is the order, says the prosecutor testified that because George's son had been involved in a firearm related criminal activity and was and was relatively young. The fact that, quote, and so this is the district court quoting the prosecutor, quote, our case was three young men using a firearm in the murder. That was the subject of the case. And they were three relatively young African-American males. So he he the district court cites this statement that the prosecutor made that is a race based statement. And he didn't include it. He didn't include the more overtly racial statement where he where she expressly I think it's I'm paraphrasing calls into question that she doubts or had doubt about whether the juror would be able to apply the law without being unduly sympathetic because she was also the mother of a of a of another young African-American male. That sentence, excuse me, that's that's what's omitted, but it's not that there's no mention of race. And hence, our curiosity about your assertion that you think the judge did consider that statement considered the fact that he even mentioned that on page 16 would would would corroborate that. And then your point is that and he omitted the language that specifically draws a contrast to Batson, which is that. I think with respect to juror MJ, you know. He reached the wrong conclusion based on what was in the record and is finding that race wasn't considered as both improbable and implausible. What's the countervailing evidence in the record that should have, in your view, caused the district court to come out the other way to decide that the prosecutor was substantially motivated by race? Well, I think. Going back to the hearing itself, first off, I think that the prosecutor was first off, she was a career prosecutor. The last thing you want to be accused of as a prosecutor is that you've been motivated by race, certainly in the selection of a jury. So I think she had the motive to consider herself and the position she was in. She then wrote this declaration, which tracked specifically with respect to all four jurors. One of the reasons that was in the California Supreme Court decision when I testified that she read the California Supreme Court. Right. But when I had her on the witness stand, she said, oh, I must have heard that case yesterday on the plane flying out to Los Angeles for the hearing. That's not true. And she said, oops, I made a mistake. Sorry about that. But I think she was much more motivated for a conclusion in this thing than just she, oops, made a mistake. Then when you take and put that together. But counsel, you pointed that out in the evidentiary hearing. The district court heard that. Yes. OK, I pointed it out. If if you read carefully, I got her first to say that she read it. Yes. And then obviously, I'm going to try to impeach her declaration. Well, and you did on the transcript. I read it. Right. And the fact that that was in the record is something as just as judge to say, says you can also consider and put it in the great basket of information when you come to the conclusion whether or not she was substantially motivated by race. Now. The the the quantitative and qualitative comparison with jury questionnaires. She said that she struck juror S since we're just using initials because she was concerned she couldn't grapple or grasp the the death penalty. The same objections and concerns about the death penalty were made by white jurors, Majerski, Grass, McMillan and Arismondi. With respect to juror L, she said I was concerned because she didn't explain what heinous crimes are, albeit she didn't ask a follow up question or submit a question to that. And then she said, well, she's 22 years old. Your honor would know that the idea that 22 you don't have life experiences didn't go over in the Shirley decision. And that was the same language she used here. With respect to juror F, the last juror, the Supreme Court didn't really identify a specific reason that she could grasp a hold of and use as a reason why she didn't as a as a race neutral reason why she didn't want that person in the jury. The Supreme Court simply mentioned, well, juror F was a seamer and had a husband who was involved in some kind of startup of a group home. Well, I don't know if that is a neutral reason when you strike for the fourth time in this kind of a criminal case. On your fourth strike, that's your reason and justification for striking a black juror when you have two black defendants. Is that the same juror that she said she's got these degrees, this education, and she's not using it, doesn't seem to be using it, wanted to ask more questions about her occupation. The trial court didn't want to allow her to ask those additional questions. And I think she expressed confusion. She had served on a jury but wasn't sure if it was state or federal court and didn't know if they'd reached a verdict. So I think the prosecutor was concerned about that juror's ability to follow the proceedings and the nuances, particularly in the penalty phase of a death penalty case. I agree that there was some concern, but I think she was more concerned about having black jurors on that panel. This whole case comes down to, I both prosecuted in federal court and defended in federal court. And there is no objection to the use of a peremptory strike unless you get into a batson situation. And she had to be on notice from the very first. The first time she struck Juror S, the hue and cry went out. And she said, well, the judge said, you know, you don't have a prima facie case. And I'm not sure why he said that because there's reference to a meeting in chambers the day before where the court and all counsel, we have no record of what was said then. But he said, I'll give you an opportunity to put your reasons for striking this juror on the record. Four times. And she testified, it's the policy of our office not to put our reasons on the record if there's been no finding of a prima facie case. Was that the policy? She said it was. I know. But is there any indication that it wasn't the policy? You know, Your Honor, I've been a federal prosecutor. I've never been a state prosecutor. It certainly wasn't in our prosecutorial office. Right. But on this part of the argument, the briefing, I was a little confused because she was given the opportunity four times. Four times she said, no, thank you, basically, and declined. I don't know that there was anything that would have made it incumbent upon her to make the record. And when she said it was the office's policy, I was sort of waiting to see whether or not that was going to be contradicted. And maybe it wasn't really the office's policy. Did she actually testify that it was the office's policy at the hearing? Because I'm looking at the declaration, and she just says that since the trial court never found a prima facie case of exclusion based on racist to each of the four challengers, I declined to state my reasons for excusing each of them. She used the office policy, and it's probably in her testimony at the evidentiary hearing. Right. Hence my question, was there some indication that it wasn't really the office policy? I don't know. And we're not sure about that? That's speculation. Yeah, but I think we can agree that she had the opportunity four times and didn't take it. And you have to ask yourself, what kind of a prosecutor, getting into this kind of a situation, would say, I'm not going to put my reasons on the record? I don't know that you do. If that was the office policy, hence my question, if that was the office policy, perhaps the conclusion is that she's following marching orders. I don't know, but we don't have that here. Yeah, even if she is following marching orders, she said she was well aware of the Batson decision. Can I switch gears here for just a moment and ask you about sort of the intersectionality between the failure of the defense counsel to make arguments at the district court about some of these comparative juror analysis claims that would go to the step three determination? So we're talking right now about, hey, these are all the things that had somebody actually considered they would have, it's implausible and reasonable, clearly erroneous to have reached this particular conclusion. But there are a number of these arguments that weren't presented to the district court, even though the Batson claim was clearly preserved. And I want to ask you specifically about the NAACP notation on the juror questionnaire. I'm looking at other juror questionnaires right now, for example, at 3ER424. This is a juror questionnaire for a different juror that lists Elks Lodge and some other affiliations. There's no notation here. But without that presentation in front of the district court, without that argument, without that comparative juror analysis, how do we know that the district court really had the opportunity to consider some of this other evidence that would allow it to determine at step three that this was substantially motivated by race? During the evidentiary hearing, I had the jury questionnaires, and I did go through my cross-examination of her, pointing out that when you say that somebody is a teacher, and I don't want teachers on my jury, that there were other teachers. But with respect to that specific note, I don't recall that that came up. And this is another example of what I would consider to be a pretty striking example of noting something that is clearly race-based. And in comparison to other jurors who had indicated affiliation with organizations where there were no notations, that seems to be an argument that would be worth making. I would agree with you entirely. But the district court's job is not, he's not there to make up the arguments. I agree. He's there to hear the evidence, form his own conclusions, draw whatever inferences are permissible from the evidence, and then make up his mind. Why should we now, on appeal, we have the evidence, the record is what it is. And I think the counsel in the last case said, well, now you should just decide this. And I think the sort of sticky issue in this particular case is that we're not sure that the district court really had the ability to consider all of these arguments and the evidence. I have to posit the argument, because I was on this case for 20 years in front of this district court judge, that if he didn't mention it, it doesn't mean he didn't consider it, I think the opinion was a result-oriented opinion. Do you want to address any other issues in the case? Well, just with respect to the comment that Judge Gould made about where does it end if we remand? I don't know if my client will still be alive if we go back on a remand and then we have a hearing. It took a lot of effort on our part to get a hearing in the first place, and then we come back up here. I think the evidence is before this court. You can draw and make your own judgments in terms of the quality of the evidence. And you can also find any inferences from the evidence. And with respect to your Honor's comment with respect to NAACP, if race wasn't a factor, why the heck was that put on that question? Well, that's the point. That was discussed, and there are other juror questionnaires that make some of those same notations. Well, I think that was the only one that said NAACP. The only one that we have that said NAACP. Yes. So there does seem to be a distinction on my scorecard. We're not here to look at the evidence and make up arguments that weren't made. The district court wasn't either. That's not his job. But, and so the juror questionnaires are sort of in one category as far as I'm concerned. It's the delta between the declaration and the testimony that was happening right there real time in the district court that seems to me to be different. Well, and I think your Honor in the prior argument made the point, which is clear, that when you put together a declaration, you craft it out. You're very careful. It's for you. But I also made the point that it's not even a matter of casting aspersions on someone's veracity. Batson is all about implicit bias. Sometimes we're biased and we don't, and we all have implicit bias. That's my view of the world. And the trick is to not pretend otherwise and to try to be very conscious of that. So it may be that, and we certainly have those cases where a judge finds a prosecutor credible, but still says, especially with comparative juror analysis, this doesn't add up, basically. And it's not persuasive in the long run. Hence, my reaction to the argument that this must be outcome based. That's really a tough stretch for me. But I am troubled by the record here. Would you like to save the rest of your time? Yes, Your Honor. All right. Good afternoon again, Your Honors.  May it please the Court. With respect to the state will not reiterate its position, just preserve that we don't think there was clear error here. However, in response to counsel's argument, I agree with the court that if indeed the district court did consider everything and perhaps just did not explicitly mention everything in its opinion, then that would weigh in favor of affirming the district court's opinion. Because then it did grapple with the reference to race that the prosecutor made, along with everything else, the totality of all the other evidence it had before it, and the prosecutor's testimony. And so if we are to accept counsel's argument that everything was considered, this court should affirm. In the alternative, in response to this court's questioning, we would maintain that if the court finds that it is not clear from the opinion that it did grapple with that race reference, then it should be remanded. This court cannot consider it. I feel like these are slightly inconsistent arguments. And I understand the difficulty that you're in, the position that you're in to sort of make these competing arguments. But I think there are equally strong arguments for if the district court considered everything and didn't even feel like it was important enough to address the clearly and blatantly race-based testimony. Then that rises to the level of clear error. So it's difficult. And I guess what I'm saying is that I don't think it's so easily one way. Could I ask you this? It seems like, I haven't heard anybody suggest that there would be need for any additional, or even justification for any additional evidentiary hearing in this case. And there was a prior occasion, it was a very overworked district court judge who lamented the resources that he needed to do his job, especially tackling a file like this. But it's also agonizing on the other end to be waiting and waiting for such a decision. So we're very mindful of all of those factors. In the past, there was a request for a mandamus. And I think 90 days was the time period that was mentioned in that order. If there were a need to do, if this needed to go back and it was only a matter of perhaps briefing, but argument on this other part of the transcript, is 90 days a realistic period of time? I'm not prepared to speak on that. Okay, are there any other points you want to address? Yes, your honor. I think that it's just worth noting that disagreeing with how the district court weighed the factors, which I interpreted counsel's argument to be that the district court did consider race, but in his belief just came to the incorrect outcome, is not the same as showing clear error. Well, that's true, but he's also got a comparative juror analysis argument. In other words, it's one thing to say, here's the universe of factors, and the judge just weighted incorrectly, or should have been persuaded. The judge wasn't persuaded, okay? And the judge did say that he considered everything. We don't know about this one omission. There's another place that we mentioned where he did mention race. This is somewhat more bleakly, but it's certainly mentioned. But they also have a comparative juror analysis. What's wrong with their comparative juror analysis, and why shouldn't it give us cause for pause? Yeah, so with respect to the comparative juror analysis, none of the jurors raised for comparative analysis as to AS were actually similarly situated, because it is a totality of the circumstances. And the prosecutor said there's almost always more than one reason for why she excused a juror. And indeed, she did articulate more than one reason for each juror. So to cherry pick out, this person was a retired teacher, or this person was an instructional aide, is not a fair comparison of apples to apples. Because they also didn't similarly express the same strong aversions to- That's always true with comparative juror analysis. They never line up exactly, right? But I don't think there was a for-cause challenge as to juror J. Is that right? Not to J, no. Right, and I don't think there could have been, because many of the statements this person made are pro-prosecution statements. She said, I'm for the death penalty. If the law says death penalty, I'm for it. Her daughter was a dispatcher at the police department. She said her son, who'd had a tangle with the law and had spent some time in jail on a gun-related offense, she said the police treated him fairly. So I can't imagine how they would have had a successful for-cause challenge. That's correct, Your Honor. However, in looking at the totality of the record, as to MJ, SD, as I addressed in the previous argument, was not similarly situated. But also the fact that the prosecutor did ask for follow-up on her additional reason, excuse me, that MJ might not understand the weighing process, that it seemed to her that perhaps she thought it was formulaic. And she wanted follow-up on that, and the district court denied that request. There was gonna be a jury instruction later that told jurors how to apply the law. And this person said, I'm for the law, I'm gonna apply the law. That's true, Your Honor. However, when evaluating the prosecutor's credibility at step three, so whether her proffered reasons were her genuine actual reasons, that's why it's important to note that she did in fact ask for follow-up on that reason, and she wasn't granted that. So it is possible that had the juror been followed up with and she said, okay, I understand that weighing process, then maybe we could say that that reason was pretextual if she offered it as a reason for excusing. Was the flip side of your argument also true when the prosecutor was asked for her justification for the striking of the three female black jurors, and she declined to provide any explanation four times? Why don't we consider that in the same way that you're describing, that we should consider her credibility as pretextual? So a couple of responses, Your Honor. The prosecutor did testify that it was DA policy. That's actually on volume three of the ER, page 244 to 245. She testified that- Could forgive me for interrupting. Is there any indication it wasn't policy? No, Your Honor. And so that's relevant. There was nothing to impeach her on that point. That was her testimony. Yeah, I'm talking about at the time of Revere, when she was asked to provide an explanation and declined to do so. Yes, so given that that was her DA policy, and again, the footnote that counsel referenced in Johnson, talking about when a prosecutor declines to state its reasons when asked about them, that footnote in Johnson presumes that a prima facie case has been made. And that didn't happen here. So we can't draw a negative inference from that because she wasn't required to under Batson, and she testified it was her DA policy to not state the reasons if a step one finding has not been made. And there was nothing to rebut that or contradict her on that point. And because the district court, again, observed her demeanor while testifying and found her to be honest and credible, we must defer to that finding. The district court was in the best position to make it. Yes, he did find that she's honest and credible. But as I kept saying, that's not where Batson ends. It's not just a credibility determination. It's whether this really makes sense because we're concerned about implicit bias. And that's the whole framework. That's why a prosecutor has to give her reasons right away. What other reasons did she give for Juror J? For J, she gave the weighing process and also the fact that she was a social worker. She worked for the Department of- Except she wasn't a social worker, right? She was just a receptionist at the Department of Social Services. What do we do about that? Is that more likely to be pretextual because she's misstated the record? Well, the district court actually addressed that in a footnote, and it said that the prosecutor's notation on the questionnaire showed that she genuinely believed that MJ was a social worker. And I think working for the Department of Social Services and believing she's a social worker is not so far off that we can say it undercuts her credibility, that she was pretextual. She was misrepresenting the record. I think there is a reasonable basis for her to have made that notation, and the district court considered, and even considering that, found that it was just a good faith mistake. It didn't undercut her credibility. What are her other reasons? Those were the three main reasons that she gave for why she excused MJ was the bias, the fact that she felt that MJ might show bias in favor of the defendants and against prosecution, the weighing, and that she was a social worker. She believed her to be a social worker. She said somewhere that she was concerned that, no, I'm sorry, and now I'm confusing her with Juror S. Juror J was divorced and didn't have the husband who started the group home. That was Juror S. Correct, and to the court's point, and another point that was raised by opposing counsel was some of the things pointed out for why the prosecutor should not be believed, the reliability. And to your Honor's point about it's not just about credibility, it has to be supported by the record. The district court actually considered and rejected, explicitly in these cases, rejected the arguments raised by opposing counsel. So for instance, the good faith mistake about when she read the California Supreme Court opinion, and the fact that she didn't ask for follow-up, especially on the heinous acts of violence. She admitted that in her testimony, the district court acknowledged that, that she didn't ask for follow-up, and then still went on to make its finding about believing her reasons, her genuine reasons for why she excused these jurors. And that she was not substantially motivated by race. So all of that is contained in the district court opinion that it considered and rejected all of those other arguments. So in sum, it's important to note that the district court did have a wealth of evidence here. There was a very rich record in that there was the contemporaneous handwritten notes, the voir dire, her motion seeking follow-up for these specific jurors before she ever even saw them in person. She made requests for follow-up on these jurors, and they actually coordinate with the reasons she later gave for why she excused them. She picked those out of their questionnaires before she ever saw them. And all of that together, the district court considered and ultimately found her to be entirely credible, that she was not substantially motivated by race. And this court should defer to that credibility finding and affirm the court's denial. Thank you, counsel. Thank you. Wait, before you run away, Judge Gould, did you have any questions for the state? Yeah, I just wanted to make sure, counsel, if we assume that the court considered everything, as the court said it did, but did not grapple with all the underlying questions explicitly, then what's the result? Does that mean we should affirm or should we remand? This court should affirm because the district court, if we presume that it considered everything, then it went on to make the ultimate step three finding. And again, it was the only court who had the benefit of seeing the prosecutor testify, judging her demeanor, and the Supreme Court has said that is perhaps the most important evidence at step three. So I don't think this court can make that finding. It would either have to affirm the district court's ruling or remand if this court wants there to be an explicit- Are you familiar with the case Shirley v. Yates, which is a case from our court that my colleague Judge Kristen was actually on? Are you familiar with that case? Yes, Your Honor. Okay. In that case, and now I'm less familiar with this case than maybe others on this panel, so you can correct me if I'm wrong. But in that case, the court held that the district court clearly erred by failing to acknowledge the race-based reason. Correct? It was a comparative juror analysis. So I apologize, Your Honor. I'm not familiar with that portion of Shirley. I'm asking you about this because your answer just now to exclude the possibility that we could find clear error based on the omission. I think your answer to Judge Gould's question was if we believe that the district court didn't explicitly address the explicit race-based statement, we would have to remand. And I'm presenting you with a case that I think does not, in fact, do that, finds clear error based on the district court's failure to acknowledge evidence in the record that indicates a race-based motive. I think that if the court did, and I understand that it's perhaps what was said in Shirley, and if that's the case and this court finds clear error, again, I don't think that it ends there. I don't think this court can then go on to make the ultimate bats and finding because you are missing that crucial part of the step three analysis. I think that if you were to find clear error, you would have to defer back to, or remand back to the district court. The difficulty with Shirley is that that's a more typical record where the prosecutor didn't remember and was recreating. Here we have this other, almost at the other end of the spectrum. Judge Gould's trying to ask a question and I'm not letting him. Yeah, so if we concluded with you, counsel, that we needed to remand for the district court to make an explicit finding, then I assume there'd be a likely additional appeal of that. And then if that's true, wouldn't that was appealed? Like a district court judgment on remand was appealed. I believe that the appellate here would be able to raise any issue that they thought appropriate to the new judgment. And if that's correct, would we be facing a likely due process challenge to the conviction because of the length of time that had elapsed since the trial? I don't think so, Your Honor, because I'm not aware of any case that holds that, just based off of the length of time. But I think that the state understands the concern about the length of time and the prejudice. However, the Batson inquiry must be accurately evaluated. And I think that although there is this record here that maybe didn't exist in Shirley, it's still a cold record. And there is a lot that is different when someone is testifying in person in front of the person who's making that credibility finding that is lost on the cold record. And so I think that the correct way under Supreme Court case law in this court's prior holdings would be to remand to the district court. And if it is this limited sort of inquiry about did it grapple with this race articulation? And if so, or if it does so in the first instance and then makes its ultimate findings based off of what it observed at the evidentiary hearing, that would be the correct way to resolve this Batson claim. Could we put a time limit on the district court? Or just be up to the district court? This court certainly could do that if it was so inclined. Okay, thank you, counsel. Thank you, counsel. Your Honor, just three quick points. Got to get to the microphone or Judge Gould won't hear you. Three quick points.  A note was handed to me that said that in the Veasley excerpt of record, volume two, page 302, there is a discussion at the evidentiary hearing about the comment of the NAACP. Volume two, page what? 302. You've got the note. Is that it? Volume two, page 302? Is that what the note says? That's right. Okay, we'll make note of it. And I appreciate that. The second one is, very quickly, I don't care what the district attorney's policy is, their office policy, if it's not lined up with Batson, the policy is irrelevant. Does Batson require her to give a reason? Excuse me? Did Batson require her to give a reason? Is that your position? Yes. I mean, that's what, if there is an inference there, she must give a contemporaneous reason for the strike, and it must be race neutral. My last quick point, is there any interest with this court in discussing uncertified claims? I haven't heard any interest, but if you'd like to address them, you may. What's your strongest uncertified claim? Mr. James and I split the case. I did Batson, and Mr. James did the uncertified claim. The clock is running. If you'd like to be heard about your strongest uncertified claim, now's your time. But you've got to get to the microphone first, or the recording won't catch your voice. Okay. May it please the court. Your Honor, I'll be very quick with this. I do want to emphasize that the PCLA claim, but with respect to penalty phase, not killed. Specifically, our argument, that's a very unusual situation, the PCLA was. And we think that the primary, there was prejudice. And actually, I would point out that Judge Wilson did find that the contract precluded the appointment of a second attorney at state expense, which is the whole point. So if they had requested more money, and had received more money, and had more help, what is it that would have come out differently? What evidence would have been offered? You've got a prejudice problem here, so. I agree, and that's the point. The point is, if you look at, in Coleman's case, I mean, in Cleveland's case, if you look at the penalty phase, Your Honor, it was an abysmal performance. If you look at what the law of the Supreme Court is, what should be done. That's a prong one argument. For my hypothetical, I'm willing to say, let's say that performance fell below an objectively reasonable standard, hypothetically. Tell me what's your strongest prong two, please. The failure, if I understand the court's question, the failure. What's prejudice? What was the prejudice? The prejudice was this, that Coleman did not have time to present mitigation in the penalty phase at all. And let me just give one example, is the strongest argument for the prejudice. One of the most important things a defense attorney does in a capital case is prepare for and present mitigation. And that is even in the face of aggravating circumstances of priors. You don't just let them come in and the evidence come in. You make an effort to mitigate the difficulty that presents for your client in front of a jury. And here, there was a 1984 conviction, which it's interesting. There was a police officer. The conviction was for an assault on a police officer by backing a car up. I think we argued this in the brief. But the fact of the matter is, the disparity between what the officer put in his reports and what all the documents available were, made it clear that what happened, according to back then, was that the officer stops, he's starting to get off his cycle, and the car backed into him and knocked him off. And then the car went forward. But then he noticed that the car was driving away, and he shot bullets into the back of the car. That's not what he testified to, though. This is what the prosecutor thought he was going to testify to. And that's what she said in the opening statement. This is what happened. And that's bad. I'm not saying it isn't. But what did he testify to? He came in and testified that the car backed into the motorcycle, and then as it was driving away, he noticed the reverse come on again, and the guy was backing up to back over him. And I just wanted to stress what the prosecutor made out of this, Your Honors. She said, partly, this is her argument after that testimony, he puts his foot on the gas, and the only reason he didn't run over Mike Gebhardt is because Gebhardt shot him. He fired at the car four times. It was the only reason he didn't kill Mike Gebhardt. He could have been victim number two. Another lucky day for Delano Cleveland. He didn't kill somebody, not because he didn't want to. And this was after she points out he moves the motorcycle, looks back, and he put it in reverse again. He puts it in reverse again. That is something which was not true. It could have been impeached without even going after the officer. The point is, that's not what he made in his report. That's not what, it was an assault, not an attempted murder. She turned it into an attempted murder. And this was an important part of her argument, Your Honor, was this. And I think that it has a major impact with respect to Mr. Coleman, and I'm sorry, Mr. Cleveland, in terms of what this jury had to deal with to decide death or not. So that's just one example of if he had the ability to get what he needed. He had a lot to deal with the guilt. And I would say that if you look at Kenan, the reason they call it Kenan counsel was the Supreme Court of California emphasized that in a death penalty case, they've got to prepare two stages at once. You can't wait. And that's the reason if you have a case where you need to be able to prepare the penalty phase at the same time as the guilt phase, he needed help to do that. And if you remember from the record, the investigator testified that he was the only investigator. He said there was no emphasis whatsoever on the penalty phase. He said our entire preparation was guilt phase. And that's what it showed. He didn't do anything. He put on four witnesses that the prosecutor made fun of, that these are just the people who say he's a nice guy. And if you look at the penalty phase, it was not even close to being the kind of mitigation that was to be attempted. That's not to say it's going to have a definite change, but it only takes one juror to say his background, his institutional history, for example, was good for seven years. There were a lot of witnesses who could have testified he was a good prisoner. A lot of reasons for a jury to say, well, we don't need to impose a death penalty. And I think that's the prejudice here was he needed help and he could not seek it like any other attorney could have because of the PCLA contract, which precluded it. So that's the main argument I make in terms of the PCLA claim. And I'll leave it at that. All right. Thank you. If there's nothing further, Judge Gould, anything further from you? From me, thank you. All right. We'll leave it at that. I want to thank all counsel for your briefing and for your arguments. It's a complicated case. It is a case that needs to be resolved. We're very, very mindful of that. And we'll get you something just as soon as we can. We'll be in recess. All rise.
judges: GOULD, CHRISTEN, DESAI